WO

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dan Coogan, doing business as Coogan Photographic,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Avnet, Inc., a foreign corporation; Roy Vallee and Jane Doe Vallee, husband and wife; Allen Maag and Jane Doe Maag, husband and wife,<br><br>　　　　　Defendants. | No. CV-04-0621-PHX-SRB<br><br>**OPINION AND ORDER** |

This case involves Defendants' improper use of photographs taken by Plaintiff Dan Coogan. At issue is a Motion for Partial Summary Judgment by Plaintiff (Doc. 59) and a Motion to Strike by Defendants (Doc. 64).

**I.　BACKGROUND**[1]

Plaintiff is a professional photographer who was retained by Upside Magazine ("Upside") to photograph Defendant Avnet, Inc.'s ("Avnet") Chief Executive Officer, Defendant Roy Vallee. Plaintiff's agreement with Upside Magazine granted the magazine one-time usage rights of one photograph of Vallee with no third-party transfer rights.

---

[1]The following facts are undisputed, except where specifically noted.

1  Following the April 2001 photoshoot, Plaintiff registered the photographs (the "Vallee
2  photographs") as an unpublished "collection" with the United States Copyright Office.
3        In October 2001, Plaintiff happened to see one of the Vallee photographs in both the
4  July/August 2001 and September 2001 issues of Avnet Global Perspective Magazine.
5  Plaintiff notified Sean Fanning, an Avnet employee, of the unauthorized use of the
6  photographs, and Fanning contacted Defendant Allen Maag, Avnet's then-Chief
7  Communications Officer.  Following a brief phone conversation in January 2002, Plaintiff
8  and Maag exchanged emails over a roughly four month period.
9        The first email from Plaintiff to Maag, dated January 10, 2002, adverts to the
10 unauthorized use of one of the Vallee photographs in Avnet's magazine, and inquires
11 whether, in addition to compensation for the unauthorized use, Avnet would like to purchase
12 the future use of some of the Vallee photographs.  (Pl.'s Statement of Facts ("PSOF"), Ex.
13 6.)  Maag responded by email on January 18, and asked Plaintiff the cost of purchasing all
14 of the Vallee photographs.  (PSOF, Ex. 7.)  Plaintiff answered that it would be more cost
15 effective for Avnet to license select images for a finite period of time, rather than purchasing
16 all of the photographs outright.  (PSOF, Ex. 8.)  Maag was apparently amenable to that
17 suggestion, and the two met in person on March 6, 2002 so that Maag could select the Vallee
18 photographs that Avnet wished to license.
19       At that meeting, Plaintiff and Maag reached an agreement concerning the past and
20 future use of the Vallee photographs.  That agreement was "memorialized," (Defs.' Resp. to
21 Pl.'s Mot. for Partial Summ. J. at 2) in an invoice (the "Invoice") dated April 9, 2002 that
22 Plaintiff emailed to Maag on April 10, 2002.  (PSOF, Ex. 14.)  The Invoice provided that
23 Avnet would pay Plaintiff $2,500 in exchange for:  the prior use of one of the Vallee
24 photographs in Avnet's magazine, and the non-exclusive use, for one year, of "[a]n additional
25 3-5 images from the same photo shoot."  (PSOF, Ex. 14.)  The Invoice further provided that
26 the images could not be used in Avnet's annual report, nor could they be transferred to third
27 parties.  (PSOF, Ex. 14.)
28

Maag forwarded the Invoice to Avnet's accounting department, which paid it in full. In response to a request for admission, Defendants admit that the check was issued to Plaintiff for payment of the Invoice, and "constitutes a writing accepting the terms set forth in the [I]nvoice."[2] (PSOF, Ex. 20 at 5, 8.)

There is no dispute that Avnet violated Plaintiff's copyright on three of the Vallee photographs by, among other things, using the photographs in the 2002 and 2003 Annual Reports, distributing the photographs to third parties, and continuing to use the images on various Avnet web pages after the license expired. Avnet maintains that the improper use occurred because Maag simply forgot about the limitations imposed by the Invoice, and as soon as Defendants were reminded of those limitations, they immediately discontinued use of the photographs. (Def.'s Statement of Facts ("DSOF"), Ex. 1.) Plaintiff contends that the improper use of his photographs by Avnet occurred because Avnet and Maag willfully disregarded the terms of the Invoice.

Avnet's Code of Conduct for North American Employees states that it is "Avnet's policy to respect the copyrights, patents and licenses of others, including their competitors and suppliers. . . . Do not make photocopies or other reproductions of copyrighted material . . . without first consulting with Avnet's legal department." (PSOF, Ex. 17, Tab 1 at 2.)

On March 29, 2004, Plaintiff filed a complaint in United States District Court, which he amended on November 10, 2004. The Amended Complaint included causes of action for copyright infringement, declaratory relief, breach of contract, and unjust enrichment. On April 25, 2005, the Court dismissed the latter cause of action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). On May 27, 2005, Plaintiff filed the instant Motion for Partial Summary Judgment.

---

[2]Despite its answer, Defendants objected to that request for admission as calling for a legal conclusion. (PSOF, Ex. 20 at 8.)

## II. LEGAL STANDARDS AND ANALYSIS

### A. Motion to Strike

Defendants move to strike the portions of Plaintiff's motion for partial summary judgment containing what Defendants believe to be evidence of offers to compromise and settlement negotiations between Plaintiff and Defendants.[3] Such evidence, according to Defendants, is inadmissible pursuant to Federal Rule of Evidence 408 ("Rule 408"), and therefore cannot be offered in support of a motion for summary judgment. *See Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir. 1988) (citing Fed. R. Civ. P. 56(e)) (other citations omitted).

Rule 408 provides that:

> [E]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. . . . This rule . . . does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Put simply, "statements made during the course of settlement negotiations are inadmissible." *In Re Golden Plan of Cal.,* 39 B.R. 551, 554 (Bkrtcy. E. D. Cal. 1984). To determine whether parties are in fact engaged in settlement negotiations, courts look to the intent of the parties. If the statement is intended to be part of the negotiations toward compromise or settlement, it should be excluded. *Kritikos v. Palmer Johnson, Inc.,* 821 F.2d

---

[3] In particular, Defendant wishes to strike the following paragraphs from Plaintiff's Statement of Facts, and the corresponding exhibits: 12-22, 25-27 and 40.

- 4 -

1  418, 423 (7th Cir. 1987) (citing 2 J. Weinstein and M. Berger, *Weinstein's Evidence* ¶ 408
2  [03], at 408-20 to -21 (1980)).  This exclusion advances the purpose of Rule 408, which is
3  to "encourage settlements.  The fear is that settlement negotiations will be inhibited if the
4  parties know that their statements may be later used as admissions of liability." *Kritikos,* 821
5  F.2d at 423 (citing *Central Soya Co., Inc., v. Epstein Fisheries, Inc.,* 676 F.2d 939, 944 (7th
6  Cir. 1982)).

7        The first piece of evidence that Defendants wish to exclude is a paragraph from
8  Plaintiff's affidavit (PSOF, Ex. 1, ¶ 17) where Plaintiff describes a meeting with an Avnet
9  employee, Sean Fanning, at which Plaintiff informed Fanning that Avnet had improperly
10 used one of the Vallee photographs in an Avnet publication.  Simply informing Fanning of
11 Avnet's copyright infringement falls outside the scope of Rule 408, as it was not part of a
12 settlement negotiation.

13       Defendants also wish to exclude all evidence of the email, phone and in-person
14 conversations between Maag and Plaintiff which culminated in the Invoice.  The first
15 question under Rule 408 is whether this exchange constitutes evidence of settlement
16 negotiations within the meaning of Rule 408.  Plaintiff's own affidavit provides a clear
17 answer to this question.  Plaintiff describes his interaction with Maag as "negotiating over
18 Avnet's unauthorized use of my photography," one purpose of which was to "settle the
19 infringement that has occurred."  (PSOF, Ex. 1, ¶¶ 20, 22.)[4]  In other words, Plaintiff
20 contacted Maag with the intent to initiate settlement talks stemming from Defendants'
21 violation of Plaintiff's copyright.  The "claim" was "disputed," as Maag informed Plaintiff
22 in an email that, "I really feel I owe you nothing regarding the usage of Roy [Vallee]'s photo
23 in the newsletter."   (PSOF, Ex. 9.)   Plaintiff was "offering" to "accept" "valuable

---

[4]Plaintiff's Motion for Partial Summary Judgment further elucidates Plaintiff's intent in conversing with Maag.  Plaintiff states that, after noticing that Avnet had used the Vallee photographs without permission, he "refrained from suing Avnet for infringement [] and instead, made attempts to negotiate an enlarged scope of the license." (Pl.'s Mot. for Partial Summ. J. at 11.)

- 5 -

1 consideration," in the form of money and future licensing of the Vallee photographs to
2 Avnet.

3 The next issue under Rule 408 is Plaintiff's purpose in offering this evidence. If a
4 party offers evidence from settlement negotiations "to prove liability for . . . the claim," that
5 evidence must be excluded. Fed. R. Evid. 408. Here, there can be no doubt that Plaintiff is
6 offering this evidence to establish Defendant's liability for willfully infringing upon
7 Plaintiff's copyrighted images. Through this evidence, Plaintiff seeks to prove that because
8 Maag was so intimately familiar with the terms of the Invoice, Maag either knew, or should
9 have known, when he and Avnet were violating those terms. Accordingly, with the
10 exception of Plaintiff's initial contact with Fanning, Defendants' motion to strike is granted.

11 **B.   Summary Judgment**

12 Summary judgment is appropriately granted when there are no genuine issues of
13 material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.
14 P. 56(c). The initial burden is on the moving party to show an absence of genuine issues of
15 material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2556 (1986).
16 If the moving party meets its initial burden, then the non-moving party must set forth specific
17 facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
18 247-48, 106 S. Ct. 2505, 2510 (1986). In deciding a motion for summary judgment, the
19 Court views the evidence of the non-movant in the light most favorable to that party, and all
20 justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S. Ct. at
21 2518.

22 Plaintiff seeks summary judgment on his copyright infringement claim and on his
23 breach of contract claim.

24 **1.   Copyright Infringement**

25 Plaintiff's copyright infringement claim breaks down into four subparts, each of which
26 will be addressed in turn: whether Defendants violated Plaintiff's copyrighted photographs
27 of Vallee; whether that violation was "willful"; whether the three copyrighted photographs
28

- 6 -

1  constitute one work or three separate works; and whether Maag, in his personal capacity, can
2  be held jointly and severally liable for Avnet's copyright violations.

### a.   Whether Defendants Violated Plaintiff's Copyright

"To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work, and (2) copying of the protected elements of the work by the defendant." *Pasillas v. McDonald's Corp.,* 927 F.2d 440, 442 (9th Cir. 1991) (citing *Narell v. Freeman,* 872 F.2d 907, 910 (9th Cir. 1989)).

Defendants do not contest that they violated Plaintiff's copyrighted photographs by using the Vallee photographs in a manner inconsistent with the terms of the Invoice. Accordingly, Plaintiff is entitled to summary judgment on this point.

### b.   Whether Defendants' Copyright Violation Was "Willful"

Section 504(c)(1) of the Copyright Act of 1976, as amended, provides that the copyright owner may elect to recover, instead of "actual damages and profits, an award of statutory damages . . . in a sum of not less than $750 or more than $30,000" for each infringement. 17 U.S.C. § 504(c)(1) (1976) (amended 1999).[5]

If however, the copyright infringement is willful,

> the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court [in] its discretion may reduce the award of statutory damages to a sum of not less than $200.

17 U.S.C. § 504(c)(2).

---

[5] All citations to the Copyright Act of 1976 throughout this Order are to the 1999 version of the statute.

- 7 -

1  A defendant willfully infringes on the copyright of another by acting "with knowledge that the defendant's conduct constitutes copyright infringement." *Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1336 n.3 (9th Cir. 1990) (quoting 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* ("*Nimmer*") § 14.04[B], at 14-40.2-.3 (1989)). This "knowledge standard" does not require that a defendant act with the "specific intent" to violate the copyright protection. *Atlantic Recording Corp. v. Chin,* 94 Fed. Appx. 531, 533 (9th Cir. 2004) (citing *Peer Int'l Corp.,* 909 F.2d at 1335-36).

Here, according to Defendants, the copyright violation was the product of a good faith mistake as to the terms of the Invoice, and was therefore not "willful" within the meaning of the Copyright Act.

Defendants' argument relies on a faulty premise - that copyright infringement cannot be willful if it occurred as a result of a mistaken belief about the terms of a license, even if that mistaken belief was held in good faith. A defendant seeking to establish the innocence of its infringement "must not only establish its good faith belief in the innocence of its conduct, it must also show that it was reasonable in holding such a belief." *Peer Int'l Corp.,* 909 F.2d at 1335-36 (citing 3 *Nimmer* § 14.04[B], at 14-40.3). *See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.,* 772 F.2d 505, 515 (9th Cir. 1985) (holding that the defendants' conduct was not willful because their good faith mistake as to the terms of their license was "not implausible"); *Danjaq LLC v. Sony Corp.,* 263 F.3d 942, 959 (9th Cir. 2001) (holding that the making of various James Bond films did not constitute willful copyright infringement in light of the "complexity of the chain of title to the various elements of the Bond stories" and the fact that the movies were produced "under color of title") (citations omitted); *Dolman v. Agee,* 157 F.3d 708, 715 (9th Cir. 1998); *Allen-Myland, Inc. v. Int'l Bus. Machs. Corp.,* 770 F. Supp. 1014, 1027 (E.D. Pa. 1991) (holding that the defendants did not willfully infringe on the plaintiff's copyright because the defendant held a reasonable, good faith belief that it were not infringing, based on the fact that the terms of the license were "not easily interpreted") (citing *Frank Music Corp.,* 772 F. 2d at 515; 3 *Nimmer* § 14.04[B], at 14-40.3).

In *Frank Music Corp.,* the plaintiffs licensed to a predecessor of Metro-Goldwyn-

Mayer, Inc.'s ("MGM") the right to produce a musical motion picture based on a play, *Kismet*, that the plaintiffs had written. 772 F.2d at 510. In addition to producing the movie, MGM also created, about twenty years later, a musical paying tribute to ten classic MGM films, including *Kismet. Id.* The plaintiffs sued, alleging that the making of the musical violated the terms of the license, and constituted willful infringement of the plaintiff's copyright by MGM. *Id.* The Ninth Circuit held that the infringement was not willful, as "Defendants reasonably could have believed that their production was not infringing plaintiffs' copyrights." *Id.* at 515.

Here, even assuming that Defendants' mistaken belief as to the terms of the license was held in good faith, it was not reasonable. Unlike the license at issue in *Frank Music Corp.,* the terms of Invoice were crystal clear: Defendants were not permitted to use Plaintiff's photographs for more than one year; Defendants were not permitted to use Plaintiff's photographs in the annual report; and Defendants were not permitted to transfer their rights to a third party. (PSOF, Ex. 14 at 2.) In spite of these unmistakable terms, Defendants violated the license. Because no jury could find that this violation was the product of a reasonable belief as to the terms of the license, Plaintiff is entitled to summary judgment on the issue of willfulness.

### c.   **One Work or Three Separate Works**

The Copyright Act of 1976, as amended, provides that a copyright owner is entitled to damages "for all infringements involved in the action, with respect to any one *work*." 17 U.S.C. § 504(c)(1) (emphasis added). The Act, however, does not provide a definition for the term "work." The issue is whether the three copyrighted photographs that Defendants used unlawfully constitute one "work" or three separate "works."

Separate copyrights do not constitute distinct "works" unless they can "live their own copyright life." *Columbia Pictures Tel., Inc. v. Krypton Broad. of Birmingham, Inc.,* 259 F.3d 1186, 1193 (9th Cir. 2001) (quoting *Walt Disney Co. v. Powell,* 897 F.2d 565, 569 (D.C. Cir. 1990)). In other words, each separately copyrighted element - here, each photograph -

"would have to be in itself . . . viable." *Walt Disney Co.,* 897 F.2d at 569 (citing 3 *Nimmer* § 14.04[E], at 14-40.13).

In *Walt Disney*, the defendant, a wholesale souvenir seller, was accused of copyright infringement for selling shirts with mouse faces resembling Mickie and Minnie Mouse. *Walt Disney Co.,* 897 F.2d at 567. One of the issues before the court was, for purposes of assessing statutory damages, the number of "works" that had been infringed. Disney succeeded in convincing the trial court that six different infringements had occurred, based on the six different depictions of Mickey and Minnie on the shirts. The D.C. Circuit disagreed, holding that:

> While Mickey and Minnie are certainly distinct, viable works with separate economic value and copyright lives of their own, we cannot say the same is true for all six of the Disney copyrights of Mickey and Minnie in various poses which the district court found to be infringed in this case. Mickey is still Mickey whether he is smiling or frowning, running or walking, waving his left hand or his right. Thus, we find that [the defendant's] mouse-face shirts infringed only two of Disney's works.

*Id.* at 570.

In *Playboy Enterprises, Inc. v. Sanfilippo,* 1998 WL 207856 (C.D. Cal. Mar. 25, 1998), Playboy sued the owners of a website which, without authorization from Playboy, posted thousands of copyrighted images that had appeared in Playboy magazine. The defendant argued that because the images had first appeared as part of compilations - i.e. in Playboy magazine - the images within those compilations should not be counted as individual infringements.

The district court sided with Playboy, reasoning that:

> [A]lthough each of these images may have appeared in a singular issue of one of plaintiff's copyrighted publications, these images are subject to re-use and redistribution in accordance with various licensing

|   |   |
|---|---|
| 1 | arrangements. Furthermore, each image represents a singular and |
| 2 | copyrightable effort concerning a particular model, photographer, and |
| 3 | location. The fact that many of these images appeared together should |
| 4 | not detract from the protection afforded to each individual effort. |
| 5 | Furthermore, defendant marketed each one of thee images separately. |

*Id.* Accordingly, the court held the defendant liable for the infringement of each individual image. *Id. See also Lee Middleton Original Dolls, Inc. v. Seymour Mann, Inc.,* 299 F. Supp. 2d 892, 897-98 (E.D. Wis. 2004) (applying economic viability test and *Playboy* factors and finding that the separate parts of a doll do not have their own independent economic life).

The considerations that guided the *Playboy* court's analysis are useful in the present case. Unlike the photographs at issue in *Playboy,* the Vallee photographs were the subject of a single license agreement. Unlike the photographs at issue in *Playboy,* the Vallee photographs involved a single subject, a single photographer and a single location. Unlike the photographs at issue in *Playboy,* there is no evidence in the record that Plaintiff marketed the images to the public separately. Rather, the photographs were taken at a single session, by a single photographer, for a single purpose.

The *Walt Disney Co.* decision also counsels in favor of considering the Vallee photographs a single work. As Defendants' brief points out, just as "Mickey is still Mickey whether he is smiling or frowning, running or walking, waving his left hand or his right," "Roy Vallee is still Roy Vallee whether he is sitting, standing or looking out the window." (Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. at 10.)  As such, the Court concludes that all of the Vallee photographs constitute a single "work" within the meaning of 17 U.S.C. § 504(c)(1).

In his motion, Plaintiff argues that because he registered the photographs as part of an unpublished "collection" within the meaning of 37 C.F.R. § 202.3, each photograph within that collection constitutes a separate "work."  Plaintiff is mistaken.  While the registration of photographs as part of a "collection" may entitle each photograph to copyright protection, each photograph is not automatically deemed a separate "work" within the meaning of 17

- 11 -

U.S.C. § 504(c)(1). None of the cases Plaintiff cites in support of his argument actually support, or even address, his argument.

Plaintiff's understanding of the law evolves considerably between his motion and his reply in support of that motion. Plaintiff devotes his reply to the argument that because the Vallee photographs are not a "compilation" within the meaning of 17 U.S.C. § 504(c)(1),[6] each photograph must therefore be a separate "work." Plaintiff is once again mistaken. The alleged failure of separately copyrighted elements to meet the definition of a "compilation" has no impact on whether those separately copyrighted elements should be considered one "work" or "separate works."[7] Accordingly, Plaintiff's proposed construction of the statute is rejected.

### d. Maag's Individual Liability

Plaintiff's motion contends that Maag, in his personal capacity, should be held jointly and severally liable for Avnet's copyright infringements. Curiously, while the Amended Complaint also names Vallee in his personal capacity (as well as his wife), Plaintiff does not make the same motion with respect to Vallee. To the Court's chagrin, Defendants (who are all represented by the same law firm) do not address this contention in their response.

"The test for finding a corporate officer jointly and severally liable with his corporation for copyright infringement is whether the officer 'has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" *Chi-Boy Music v. Towne Tavern, Inc.,* 779 F. Supp. 537, 530 (N.D. Ala. 1991) (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.,* 316 F.2d 304, 307 (2d Cir. 1963); *Broad. Music, Inc. v. Blueberry Hill Family Rests., Inc.,* 899 F. Supp. 474, 481 (D. Nev. 1995)

---

[6] 17 U.S.C. § 504(c)(1) provides that, "[f]or purposes of this subsection, all the parts of a compilation . . . constitute one work."

[7] The Copyright Act defines "compilation" as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101.

(quoting *Chi-Boy Music,* 779 F. Supp. at 530). *See Comm. for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 823-24 (9th Cir. 1996) (noting that a corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf).

Here, the evidence is undisputed that Maag possessed at all relevant times the right and the power to supervise the infringing activity. In response to an interrogatory, Defendants stated that "Maag is the individual responsible for keeping track of Avnet's right to use the photographs at issue." (PSOF, Ex. 24, Tab 3 at 4.) Also, Maag admitted in an affidavit that he had the authority to stop the infringing activity. (DSOF, Ex. 1, ¶ 6.) *See Playboy Enters. v. Starware Publ'g Corp.,* 900 F. Supp. 438, 440-41 (S.D. Fla. 1995) (granting the plaintiff's motion for summary judgment on the issue of the liability of one of the defendant's corporate officers, where the officer admitted that he had the ability to supervise the infringing activity and where the officer admitted that had the authority to terminate the infringing activity).

The evidence about whether Maag has a financial interest in the copyright infringement is less clear. On one hand, there is no dispute that, at all relevant times, Maag was an Avnet corporate officer and a member of the Avnet Executive Committee. (PSOF, ¶ 40.) However, Plaintiff has offered no evidence concerning Maag's pay structure or stock ownership, and therefore, it cannot be said as a matter of law that Maag had a financial interest in encouraging the infringement. Accordingly, summary judgment on this issue is inappropriate.

### 2. Breach of Contract

In this portion of Plaintiff's motion for partial summary judgment, Plaintiff argues that his acceptance of $2,500 from Avnet does not constitute an abrogation of his right to sue Defendants for the copyright infringement that occurred when Defendants improperly used one of the Vallee photographs in two issues of their magazine. Any argument to this effect, however, is precluded by the Court's ruling on Defendants' Motion to Strike. That Plaintiff

may have accepted the $2,500 "to avoid litigation" is an allegation lacking evidentiary support in the record, as the evidence that was offered in that regard is inadmissible pursuant to Rule 408.

The issue of whether Defendants, as a matter of law, materially breached their contract with Plaintiff, does not require that the Court look to the stricken evidence. The evidence is undisputed that an agreement existed between Plaintiff and Defendants concerning the terms under which Defendants were entitled to use the Vallee photographs, and those terms are set forth in plain, clear language. The evidence is undisputed that Defendants violated those terms by using the photographs after the license expired, using the photographs in Avnet's Annual Reports, and transferring the photographs to third parties. The evidence is further undisputed that the license agreement allowed the use of the photographs already published in Upside Magazine and Global Perspectives in 2001. Therefore, Plaintiff is not entitled to summary judgment declaring that the $2,500 payment is only an "offset" against damages for the 2001 infringements.

## III.   CONCLUSION

As a matter of law, the Vallee photographs constitute one "work" within the meaning of 17 U.S.C. § 504(c)(1), and Defendants willfully violated the copyright that Plaintiff holds in those photographs. Also, Defendants' use of the Vallee photographs in a manner inconsistent with the terms of the Invoice compels summary judgment in Plaintiff's favor on his breach of contract claim. Material questions of fact remain as to whether Maag is jointly and severally liable for the damages stemming from the copyright violation. Plaintiff's Motion for Partial Summary Judgment is therefore granted in part and denied in part. As Plaintiff's motion does not address the issue of damages, or remedies more generally, the Court will not initiate that discussion *sua sponte*.

1 **IT IS ORDERED** granting Defendants' Motion to Strike (Doc. 64).

2 **IT IS FURTHER ORDERED** granting in part and denying in part Plaintiff's Motion
3 for Partial Summary Judgment (Doc. 59).

5 DATED this 24th day of October, 2005.

*/s/ Susan R. Bolton*
Susan R. Bolton
United States District Judge