**MESCHKOW & GRESHAM, P.L.C.**
Jordan M. Meschkow (AZ Bar No. 007454)
Lowell W. Gresham (AZ Bar No. 009702)
5727 North Seventh Street
Suite 409
Phoenix, Arizona 85014-5818

(602) 274-6996
(602) 274-6970 (facsimile)
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DAN COOGAN, doing business as COOGAN PHOTOGRAPHIC,<br><br>Plaintiff,<br><br>v.<br><br>AVNET, INC., et al.,<br><br>Defendants. | **Case No.: CV-04-0621 PHX SRB**<br><br>**PLAINTIFF'S MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE –and-- FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT**<br><br>(Assigned to The Hon. Susan R. Bolton) |

Pursuant to the Court's October 3, 2005 Minute Entry, Rules 26 and 37, FED. R. CIV. P., and Arizona case law, Plaintiff Dan Coogan ("Coogan" or "Plaintiff"), by and through undersigned counsel, hereby moves this Court to impose appropriate sanctions, including but not limited to contempt, upon Defendants for their intentional withholding, destruction, and spoliation of information harmful to their case. Coogan's Motion is supported by the attached Memorandum of Points and Authorities and the entire record in this case, incorporated herein by reference.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants have repeatedly withheld documents, misled Plaintiff, destroyed documents and generally done as much as they possibly can to delay this litigation and

8050-0131-108                                           1

avoid taking responsibility for their actions.

On October 3, 2005, in a telephonic hearing, this Court ordered Defendants to "make a good faith effort to provide plaintiff with better production of requested documents". The hearing concluded with the Court telling Plaintiff's counsel to inform the Court if Defendants failed to produce *anything* by October 17, 2005 (the Minute Entry specifically stating "If plaintiff can cite specific items defendant has admitted to using which have not been produced, the Court will reconsider plaintiff's request to allow him access to defendant Avnet's computers." Plaintiff hereby informs the Court of documents that have not only been withheld, but also destroyed, as well as other recent and relevant happenings in this case.

Although Defendants made a document production to Plaintiff on October 17, 2005, the production included emails that referred to numerous relevant and requested documents that Defendants *have not produced*. Unbelievably, these emails also openly refer to relevant and specifically-requested documents that Defendants intentionally destroyed almost immediately after Plaintiff's counsel sent them a Notice of Infringement letter notifying Defendants that they were unlawfully infringing on certain of Plaintiff's copyrighted photographs and that litigation, therefore, could follow. Defendants must be held accountable for the egregiousness of their actions, including the knowing destruction and spoliation of highly relevant information.

## II.    FACTUAL BACKGROUND

This case was filed March 29, 2004, nearly five weeks after both Defendant Avnet and Defendant Maag, Avnet's Chief Communications Officer and a corporate officer, were sent a Notice of Infringement letter that notified Defendants that they were unlawfully infringing on certain of Plaintiff's copyrighted photographs. *See* Letter from J. Meschkow to A. Maag, February 24, 2004, attached as Exhibit A. This Notice of Infringement specifically identified Avnet's printed 2002 and 2003 Annual Reports, in and along with a veritable checklist of infringing uses in those Reports and elsewhere. *Id*.

8050-0131-108                                    2

On September 27, 2004, Plaintiff served written discovery requests on Defendants, that included requests for any documents demonstrating or evidencing Defendants' use of Plaintiff's copyrighted photographs. The following are relevant excerpts from these requests:

- Plaintiff's First Set of Interrogatories to Defendant Avnet, Inc.
  - o Interrogatory no. 1:  Identify methods for posting Plaintiffs Photographs on any and all Avnet website."
  - o Interrogatory no. 3:  "Identify methods utilized in the preparation of all Avnet annual reports and Avnet-related publications, including, but not limited to, the methods for using any of Plaintiff's Photographs in any such report or publication."
  - o Interrogatory no. 4:  "State the date *(month, day, and year)* and circumstances concerning Defendants' first use and all subsequent uses of Plaintiff's Photographs of Roy Vallee and the manner and extent of such first and all subsequent uses, whether on an Avnet website, a Third-party website, or in any report or publication."
- Plaintiff's First Requests for Production of Documents to Defendant Avnet, Inc.:
  - o Request No. 1:  "All documents that Defendant was required to identify or did identify in its response to Plaintiff's First Set of Interrogatories to Avnet."
  - o Request No. 2:  "All documents concerning any photographs, and their use, if any."
  - o Request No. 4:  "All documents concerning any of Plaintiff's Photographs, and where applicable to Pose A and Pose B, broken out by Pose A and Pose B."
  - o Request No. 5:  "One copy of each document on which all photographs, including any of Plaintiff's Photographs have been displayed, including without limitation advertisements, tear sheets, internal publications, documents for customers, clients, or investors, product packaging, signs, brochures, posters, stationery, business cards, promotional materials, contracts, decals, labels, badges, mail order solicitations, billing and order forms, computer software, pages or sites on the internet's world wide web, and computer screens or screen printouts."
  - o Request No. 10:  "All Avnet promotional documents that make use of photographs, including without limitation, advertisements, brochures, fliers, sales tools, catalogs, order forms, price lists, training materials, memoranda and bulletins, trade magazines, annual reports, and all documents related to the use of that photography."

*See* Avnet's Responses to Plaintiff's First Set of Interrogatories to Avnet, Inc. and Plaintiff's First Requests for Production of Documents to Defendant Avnet, Inc., attached

8050-0131-108

3

as Exhibit B. These discovery requests should have led to the identification and production of, *inter alia*, Defendant Avnet's Annual Reports, editions of Avnet Global Perspective magazine, relevant web pages or web prints, identification of web sites utilizing the photographs in question, emails and other communications within the company identifying uses of Plaintiff's photographs,  and photographic images and other relevant documents; *none* of these documents was attached to Defendants' discovery responses, however. *Id*. Despite discovery responses that reference Avnet's Annual Reports and relevant web pages, Defendants continually refused to produce the actual Annual Reports and web pages to which it referred.

Plaintiff again issued additional discovery requests in January and February 2005 that, once again, should have resulted in Defendants' production of Avnet's Annual Reports, internal emails, and relevant web pages, among other things. *See* Avnet's Responses to Plaintiff's Second Request for Admissions to Defendant Avnet, Inc., attached in Exhibit C (where Defendants identified Annual Reports, Avnet Global Perspective magazine issues, various and sundry documents and files in various and sundry formats of Coogan's Photographs) and Avnet's Responses to the co-served Plaintiff's Second Request for Production to Avnet, Inc. (attached as Exhibit D), Request No. 2 (responding to a document request for "[c]opies of any and all documents, including but not limited to invoices, contracts, agreements, receipts, and correspondence identified in or used to answer any request in Plaintiff's Second Request for Admissions to Defendant Avnet, Inc. or to Plaintiff's Third Set of Interrogatories to Defendant Avnet, Inc."). Again, Defendants responded as follows:

> Response: See documents Bates-labeled AVN0064-67, AVN0020-45 and AVN0001-16, previously disclosed with Avnet's Initial and 1st Supplemental Disclosure Statements. See also May 14, 2004 email from A. Maag to Avnet employees regarding Maag's order to stop using plaintiff's photographs, produced herewith as Bates # AVN0063

*See* Exhibit D, Page 4.  The Response, once again, should have included copies of all of the issues of Avnet Global Perspective that included plaintiff's photographs (*see* Exhibit

8050-0131-108                                        4

C, Nos. 1 and 2), relevant issues of Upside Magazine (or images Upside Magazine gave Defendants) (*see* Exhibit C, Nos. 1 and 2), a photograph or photographs in GIF format (*see* Exhibit C, No. 44), in PDF format (*see* Exhibit C, No. 47), a photograph or photographs used by Defendants on the website www.avnet.com and was stored on the website at www.avnet.com (*see* Exhibit C, No. 62), an 80 x 110 @ 72 dpi jpeg photographic image (*see* Exhibit C, No. 70), an 1868 x 2568 @ 300 dpi tiff photographic image (*see* Exhibit C, Nos. 70 and 79), an 80 x 110 @ 72 dpi jpeg image (*see* Exhibit C, No. 77), a 448 x 616 @ 72 dpi jpeg photographic image (*see* Exhibit C, No. 78), a 504 x 604 @ 72 dpi jpeg photographic image (*see* Exhibit C, No. 122), a 2002 Annual Report in PDF format with Coogan's photograph therein (*see* Exhibit C, No. 136), the Avnet 2002 Annual Report with Coogan's photograph therein (*see* Exhibit C, No. 139), a 2002 Annual Report in PDF format with Coogan's photograph therein (*see* Exhibit C, No. 142), a 2003 Annual Report in PDF format with Coogan's photograph therein (*see* Exhibit C, No. 151), and the Avnet 2003 Annual Report with Coogan's photograph therein (*see* Exhibit C, No. 154). Once again, Plaintiff Coogan continued to inquire as to Defendants' deficient productions and, once again, Defendants continued to refuse to produce the relevant documents.

In March 2005, Defendants finally served supplemental answers to Plaintiff's first discovery requests from six months prior, but these responses were still woefully incomplete. For example, Defendant Avnet identified that it "posted the photographs at issue on Avnet websites as Joint Photographic Experts Group files (.jpg), Graphics Interchange Format files (GIF), and Tagged Image File Format files (TIFF) types[,]" and that it posted Plaintiff's photographs as part of its 2002 and 2003 Annual Reports which were available for download as Portable Document Files (PDF)." *See* Avnet's Supplemental Responses to Plaintiff's First Set of Interrogatories to Defendant Avnet, Inc. and Avnet's Supplemental Responses to Plaintiff's First Request for Documents to Avnet, Inc., collectively attached as Exhibit E, at Interrogatory No. 1, and Document Request No.

1[1]. Until October 17, 2005 none of documents identified in these Supplemental Responses were produced. Although Defendants would argue that their Responses identified websites where Plaintiff could have downloaded certain relevant information long ago, such websites were ever-changing and, as set forth in greater detail below, Defendants knowingly destroyed many of the earlier versions of the websites relevant to this litigation.

In late September 2005, after nearly one year of waiting, in yet another good-faith attempt to obtain the requested documents, Plaintiff determined he could order copies of Defendant Avnet's Annual Reports from their website for investors and other interested persons.  Plaintiff ordered copies of Avnet's 2002 and 2003 Annual Reports, which he received in the mail on or about September 27, 2005.  Plaintiff was shocked to discover that the hard copy of Avnet's Annual Report that was being mailed to investors and potential investors *was not the same* as the downloadable PDF version that Defendants were currently making available for purposes of this lawsuit; rather, the version being mailed to the public was the older, *infringing* version of the Annual Report, with Plaintiff's copyrighted photographs included.  *See* Affidavit of Plaintiff Dan Coogan, attached as Exhibit F.

On October 14, 2005, Plaintiff disclosed to Defendants the Avnet Annual Reports he had ordered through the mail, thus disclosing Defendants' own Annual Reports to Defendants. *See* Plaintiff's Third Rule 26(A)(1) Disclosure Statement, attached as Exhibits G1 to G6.  Three days later, on October 17, 2005, Defendants made a production to Plaintiff that included these infringing hard-copy versions of Avnet's 2002 and 2003 Annual Reports.  Defendants' production, however, contained no other printed versions of the Annual Reports and did not disclose that Defendants were continuing to distribute the infringing Reports or that the previously identified downloadable Annual Reports were

---

[1] This response read "See attached documents [Corporate Personnel Flowcharts] and documents attached to Avnet's Initial and First Supplemental Disclosure Statements. Because discovery is ongoing in this matter, Defendants reserve the right to supplement this and all other discovery responses." **Still, however, no Annual Reports were produced.**

different than the hard copies of the Reports being mailed to the public. *Id*.  Rather, Defendants continued to allow Plaintiff to believe that the infringing Reports were no longer being used by Defendants and did not inform Plaintiff that the infringing Annual Reports were being distributed as late as last month. *See* Exhibit F.  Defendants also misrepresented this fact to this Court. *See* Avnet's Response to Plaintiff's Partial Motion for Summary Judgment on the Issues of Copyright Infringement, Willful Infringement, and Breach of Contract, Page 3, lines 4-6, and Avnet's Separate Statement of Facts in Support of Its Response to Plaintiff's Partial Motion for Summary Judgment on the Issues of Copyright Infringement, Willful Infringement, and Breach of Contract, ¶9. Presumably Defendants were hopeful that Plaintiff would never discover their scheme.

Myriad letters and two Motions to Compel went back and forth regarding the need for major supplementation of almost all aspects of Defendants' disclosures.  On October 3, 2005, in response to a meet and confer, this Court was forced to get involved and order Defendants to produce all relevant documents by October 17, 2005. *See* Page 2, ¶2, *infra.*

Pursuant to the Court's Order, on October 17, 2005 Defendants produced certain documents, including the above-referenced versions of the requested 2002-2003 Annual Reports.  Still, however, Defendants' disclosures were woefully incomplete, lacking all of the web pages highly relevant to this litigation (for comparison with numerous identified photographic images *found* and supplied) **and what could be the numerous identified photographic images destroyed**.  In yet another attempt merely to obtain the information needed for his case, Plaintiff issued another set of discovery requests on October 14, 2005, only to be met with Defendants' audacious complaints that Plaintiff has issued *too many* discovery requests. <u>See</u> C. Houston November 11, 2005 letter, at end-of-page 2 to page 3, 1st ¶, attached as Exhibit H.

By way of example, Defendants' latest production of October 17, 2005, included an internal email, sent the day after Defendants received Plaintiff's February 24, 2004 "Notice of Infringement" letter, identifying websites using the infringing photographs. *See*

Email from V. Calabro to R. SantaCruz et al., February 25, 2004, attached hereto as Exhibit I.  Defendants did not preserve any of the websites identified by Calabro.

Similarly, Defendants produced another internal email dated one day later in which Rachel SantaCruz, apparently in response to yet another email that has not been produced, went about and deleted all of the infringing uses of the photographs in question that she could find. *See* Email from R. SantaCruz to B. Hackett, February 26, 2004, attached hereto as Exhibit J.  Lastly, Defendants produced yet another email dated February 18, 2004 in which Bryan Carter was again directly transferring plaintiff's photographs to a Morgan Stanley representative (attached hereto as Exhibit K), and no copy of the third party use was supplied.  Had the latter been supplied to Plaintiff in November 2004, copies might have been retrievable and used in Plaintiff's Motion for Summary Judgment.

Thus, despite Plaintiff's massive good-faith attempts to obtain relevant, discoverable information critical to Plaintiff's case and harmful to the defense, Defendants continue to withhold relevant information (including the emails preceding those sent in February 2004 by Vicki Calabro and Rachel Santa Cruz and the fact that Defendants continued to distribute infringing Annual Reports as recent as last month), and have even destroyed some of the most relevant emails and web pages, at a minimum, and also who knows how many relevant images. *See*, *e.g.*, Exhibit J.

**III.  PLAINTIFF REQUESTS AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT FOR VIOLATING THE COURT'S OCTOBER 3, 2005 ORDER.**

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493, 265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).  Plaintiff, therefore, moves this Court to order a "show cause" hearing, at which Defendants must show cause why they should not be held in contempt.

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated

8050-0131-108                                                    8

a specific and definite order of the court." *Hansbrough v. Birdsell (In re Hercules Enters.)*, 387 F.3d 1024, 1028 (9th Cir. 2004) (quoting *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1190-91 (9th Cir. 2003)).  As will be shown at a "show cause" hearing, Defendants unquestionably violated the Court's October 3, 2005 Order by failing to produce information relevant to this lawsuit that had been requested previously by Plaintiff.

District courts have broad discretion in imposing an equitable remedy for civil contempt. *McGregor v. Chierico*, 206 F.3d 1378, 1385 n.5 (11th Cir. 2000).  "The sanctions may serve to either (1) coerce the contemnor to comply with a court order, or (2) compensate a party for losses suffered as a result of the contemnor's act." *Id.*  Plaintiff will request that the Court hold Defendants in contempt to coerce them to fully comply with the disclosure requirements in this case, and to additionally compensate Plaintiff for his costs and attorneys' fees incurred in repeatedly seeking the withheld documents and information.  Since alternative remedies could be issued here, a Proposed Order to Show Cause is **NOT** attached hereto.

IV.     **IN ADDITION TO BEING HELD IN CONTEMPT, DEFENDANTS MUST ALSO BE HELD ACCOUNTABLE FOR THEIR INTENTIONAL WITHHOLDING AND SPOLIATION OF EVIDENCE IN THIS LITIGATION.**

A.     **Defendants Should Be Sanctioned Under Rule 37 for Their Intentional Withholding of Documents and Information Harmful to Their Case.**

1.     *Dismissal of the Relevant Defenses is the Appropriate Remedy.*

"A party's or attorney's knowing failure to timely disclose damaging or unfavorable information shall be grounds for imposition of serious sanctions in the court's discretion up to and including dismissal of the claim or defense." ARIZ. R. CIV. P. 37(d). While courts are cautious in applying severe sanctions such as dismissal of one's defense or, similarly, a default judgment for Plaintiff, courts are encouraged to impose such a sanction when warranted, as when the failure to disclose is intentional and/or willful.  For example, in *National Hockey League et al. v. Metropolitan Hockey Club, Inc. et al.*, 427 U.S. 639 (1976), the United States Supreme Court reversed the appellate court and upheld

the trial court's imposition of dismissal as a sanction where the respondents did not respond to interrogatories ordered by the court.  The Supreme Court held,

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order.  It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the district court.

> But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.  If the decision of the Court of Appeals remained undisturbed in this case, it might well be that *these* respondents would faithfully comply with all future discovery orders entered by the District Court in this case.  But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts.  Under the circumstances of this case, we hold that the District Judge did not abuse his discretion in finding bad faith on the part of these respondents, and concluding that the extreme sanction of dismissal was appropriate in this case by reason of respondents' "flagrant bad faith" and their counsel's "callous disregard" of their responsibilities.

*National Hockey League*, 427 U.S. at 642-43; *see also Central Cycle Sales, Inc. v. Obert*, 533 P.2d 686, 687, 23 Ariz. App. 378, 379 (1975) (upholding sanction of dismissal where appellant repeatedly failed to answer interrogatories:  "Clearly the sanction imposed was severe.  Strong methods were justified, however, in view of defendant's abuse of the rules of civil procedure and total disregard of the court's order.").  Thus, the imposition of dismissal of one's defense, while severe, should not be avoided when, as here, it is necessary to deter wrongful and intentional withholding of information.

Here, Defendants withheld Annual Reports that were not only relevant, but that Plaintiff had requested numerous times.  Even worse, Defendants made two separate sets of the Annual Reports and did not produce them until over 18 months after the initiation of this lawsuit, and over a year after Plaintiff's first discovery requests asking for the Reports.  Still worse however, is Defendants' continuing failure to disclose that they have continued to distribute and publicize the infringing Annual Report throughout the duration this

lawsuit, apparently assuming Plaintiff would not find out. The worst offense by far, though, is that Defendants' represented otherwise to this Court and to Plaintiff, hoping for leniency.

The bottom line is that Defendants failed and continue to fail to disclose "damaging or unfavorable information" as prohibited by the Arizona Rules of Civil Procedure, and they therefore, must receive "serious sanctions in the court's discretion up to and including dismissal of [their] . . . defense." ARIZ. R. CIV. P.  37(d).  Plaintiff believes the most appropriate sanction is to dismiss Defendants' defense (and, therefore, grant default judgment to Plaintiff) on the infringement issues and/or to not allow Defendants to contest Plaintiff's case regarding damages. *See*, *e.g.*, *Verde Ditch Co. v. James*, 157 Ariz. 369,371-72, 758 P.2d 144, 146-47 (App. 1988) (upholding trial court's entry of default judgment as a discovery sanction); *Copper State Bank v. Saggio*, 139 Ariz. 438, 441, 679 P.2d 84, 87 (App. 1983) (upholding imposition of default judgment as a sanction where a self-represented appellant failed to appear for a deposition:  "Rule 37(b)(2)(C) specifically allows entry of default against the disobedient party.").

### 2. Alternatively, At a Minimum, Lesser Sanctions, Such as   Findings of Fact and Law, Plus the Imposition of Attorneys' Fees and Costs, Should Be Imposed.

Alternatively, the Court is allowed wide discretion in imposing other or additional sanctions under Rule 37, including but not limited to an adverse inference regarding the relevant claims, allowing facts stated in the withheld letters to be established for the purposes of the action, refusing to allow Defendants o present defenses on certain claims, an award of costs and attorneys' fees to Plaintiff, or holding Defendants in contempt of court, as addressed *supra*. *See* Rule 37(b)(2), ARIZ. R. CIV. P.

One option in this case is for the Court to order that one or more of the following facts and/or legal conclusions be taken as established for purposes of this case:   (a) Defendant Avnet intentionally and knowingly infringed upon no fewer than three of Plaintiff's separate and individual copyrightable photographs; (b) Plaintiff's method of

calculating damages, so long as supported by authority, shall not be contested by Defendants.

### B.     Defendants Also Should Be Sanctioned Under Arizona Common Law for Spoliation of Evidence.

Parties to civil litigation have an affirmative duty to preserve relevant evidence. *Souza v. Fred Carries Contracts, Inc.*, 191 Ariz. 247, 250, 955 P.2d 3, 6 (App. 1997). Spoliation of evidence occurs when this duty is breached and evidence pertinent to a prospective civil action is destroyed. *Hirsch v. General Motors Corp.*, 266 N.J. Super. 222, 234, 628 A.2d 1108, 1113 (1993).  Courts, under their inherent powers, may impose various sanctions for the spoliation of evidence, including an adverse inference against the spoliator, the exclusion of certain evidence that the spoliator wishes to introduce, or dismissal of the spoliator's case.

Trial courts have broad discretionary power to sanction a party for the destruction or spoliation of relevant evidence. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). In choosing the appropriate sanction, courts consider factors such as egregiousness of the spoliator's conduct, degree of fault by the spoliating party, impact on the non-spoliating party, intent, and whether a lesser sanction would be fair and would sufficiently deter similar conduct in the future). *See, e.g., Souza*, 191 Ariz. at 250, 955 P.2d at 6, discussed *infra*, and *Schmid v. Milwaukee Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

#### 1.     *Again, Dismissal of the Relevant Defenses is the Appropriate Remedy.*

Although dismissal is considered a harsh sanction, it is an acceptable sanction for spoliation of evidence. *Souza*, 191 Ariz. at 249, 955 P.2d at 5. *See also Chambers v. NASCO*, 501 U.S. 32, 45 (1991) ("outright dismissal . . . is a particularly severe sanction, yet is within the court's discretion.").  In *Souza*, 191 Ariz. 247, 955 P.2d 3, the Arizona Court of Appeals applied several factors to determine whether the sanction of dismissal was warranted.  In *Souza*, after the plaintiff had a blow-out and totaled her car, the car was towed to a storage yard. *Souza*, 191 Ariz. at 249, 955 P.2d at 5.  The plaintiff sued the used

8050-0131-108                                  12

car dealer from whom she purchased the car, alleging negligent maintenance and repair of the car. *Id.*

After the car had been sitting in the storage yard for over two years, the storage yard owner gained title to the car pursuant to Arizona's abandoned vehicle statutes, and destroyed the car without either of the parties' knowledge. *Id.* The defendant contended that the plaintiff could not establish a case without the car, and moved for summary judgment or, in the alternative, the sanction of dismissal for spoliation of evidence. *Id.* The trial court granted summary judgment for the defendant; however, the Arizona Court of Appeals held that summary judgment was tantamount to the sanction of dismissal, which was too harsh a sanction given that the plaintiff's failure to preserve evidence was merely negligent. *Id.*

In reaching its decision, the *Souza* court considered five factors. First, the court noted that, while the plaintiff had a duty to preserve evidence, she did not willfully destroy the evidence; rather, she was merely negligent. *Souza*, 191 Ariz. at 250, 955 P.2d at 6. Second, unlike the instant case, the plaintiff's conduct did not come within the realm of FED. R. CIV. P. 37 because she did not fail to comply with a court order or abuse discovery procedures. *Id.* Third, the defendant held a lien on the car and, therefore, could have retrieved and preserved the car as easily as the plaintiff could have. *Id.* at 251, 955 P.2d at 7. Fourth, the prejudice caused by the destruction of the car was minimal. *Id.* "[N]o evidence establish[ed] that destruction of the [car] rendered [the defendant] completely incapable of mounting a defense or irreparably prejudiced its ability to defend." *Id.* Finally, the court of appeals held that the trial court did not thoroughly consider less severe sanctions.

In the instant case, application of the *Souza* factors suggests that dismissal is not only warranted, but essential. First, as discussed, Defendants acted in bad faith, to purposefully delete key emails and web pages, *as early as the day after they were notified*

that Plaintiff had retained counsel to address Defendants' infringements of his photographs. This type of behavior is inexcusable.

Second, Defendants have completely failed to comply with discovery procedures. Defendants failed to produce relevant documents and, indeed, have yet to produce certain relevant, requested information, even though such information is responsive to numerous Requests for Production and Interrogatories propounded by Plaintiff. Incredulously, Defendants even cited the missing web pages, emails, and Annual Reports in response to Plaintiff's propounded discovery, yet failed to produce the very documents to which they cite. This conduct amounts to an abuse of the discovery process.

Third, Plaintiff has had no opportunity to obtain or preserve the evidence as the defendant in *Souza* did. To the extent any such opportunity existed, Plaintiff has taken advantage of it, making every effort to visit Defendants' websites frequently, download information, and order Annual Reports.

Fourth, the prejudice caused by the absence of the withheld and spoliated documents is monumental. Without these documents, Plaintiff is unable to ascertain the truth, the magnitude, or the extent of Defendants' infringements and the resulting damages.

Finally, lesser sanctions in this case will neither adequately remedy the prejudice suffered by Plaintiff nor adequately punish Defendants for their intentional spoliation of evidence. The seriousness of the spoliation is compounded by Defendants' bad faith. Defendants were informed of the forthcoming lawsuit and immediately began deleting documents. Their conduct is so egregious and so damaging that dismissal is the only sanction that would fully remedy their actions.

### 2. *Alternatively, At a Minimum, Lesser Sanctions, Such as Findings of Fact and Law, Plus the Imposition of Attorneys' Fees and Costs, Should Be Imposed.*

Should the court decide to impose a sanction less severe than dismissal of relevant defenses, Plaintiff requests that the Court impose a finding of fact, or allow an adverse

8050-0131-108                                    14

inference, that the destroyed emails and web pages would be adverse to Defendants, as set forth above in Section IV.A.2.. "The adverse inference rule provides that 'when a party has relevant evidence within its control which it fails to produce, that failure gives rise to an inference that the evidence is unfavorable to the party.'" *Park Inns Int'l, Inc. v. Pacific Plaza Hotels, Inc.*, 5 F. Supp.2d 762, 765 n.2 (D. Ariz. 1998) (quoting *Rockingham Machine-Lunex Co. v. N.L.R.B.*, 665 F.2d 303, 304 (8th Cir. 1981)).

Cases invoking the lesser sanction of an adverse inference generally involve a lower level of intent than the intentional acts by Defendants in this case. For example, in *Reingold v. Wet 'N' Wild Nevada, Inc.*, 113 Nev. 967, 944 P.2d 800 (1997) the plaintiff was injured at a water park and sued the company that owned the park. The plaintiff submitted interrogatories to the defendant relating to other, similar accidents occurring at the park between 1984 and 1989. *Reingold*, 113 Nev. at 970, 944 P.2d at 802. The defendant testified that the requested information was unavailable because the company routinely destroyed all of the records relating to accidents every season. *Id.* The court imposed an adverse inference with regard to the records, holding that the defendant's document destruction policy allowed accident records to be destroyed before the statute of limitations had run on any potential litigation relating to such accidents. *Id.*

In *Reingold*, in contrast to the instant case, the defendant did not destroy evidence with an eye toward keeping the documents from the plaintiff. Further, the prejudice caused by the spoliation in *Reingold* was much lower than in the instant case, as the documents in *Reingold* did not form the crux of the plaintiffs' case. Thus, Plaintiff argues that an adverse inference, the sanction imposed in *Reingold*, is too lenient a sanction for the conduct in this case.

Similarly, in *Glover*, 6 F.3d 1318, 1329, the plaintiffs sued a lighter manufacturer for the wrongful death of their father. The plaintiffs' father died from a fire that started in his shirt between his chest and his waist; his lighter was found in his shirt pocket. *Id.* at 1321. The defendant manufacturer alleged that the plaintiffs' expert's unilateral

8050-0131-108　　　　　　　　　　　　　　15

disassembly and examination of the lighter spoliated the lighter before the defendant's expert could examine it. *Id.* at 1322. The Ninth Circuit determined that, although the plaintiffs' experts were careless, the defendant's expert had still been able to examine the lighter and testify as to his findings that the lighter did not cause the fire. *Id.* Thus, the trial court was within its discretion to allow both the lighter and the Plaintiffs' expert's testimony to be admitted and merely impose the adverse inference rule. *Id.* at 1329-30. In *Glover*, as in *Reingold*, the level of intent, as well as the prejudice to the non-spoliating party, was much lower than in the instant case.

In sum, Defendants have intentionally spoliated some of the most important documents in this litigation and have largely prevented Plaintiff from fully prosecuting his case. In light of the importance of these documents, the prejudice caused by their spoliation, and Defendants' bad faith, Plaintiff requests that the court sanction Defendants by dismissing their defenses to Plaintiff's claims and damages case. In the alternative, Plaintiff requests that the court make a finding of fact or allow an adverse inference that the withheld and destroyed emails and web pages, and the 2002 and 2003 Annual Reports, were harmful to the defense.

## V. PLAINTIFF COOGAN IS ENTITLED TO HIS ATTORNEYS' FEES AND COSTS.

Plaintiff is entitled to his reasonable costs and attorneys' fees for (a) bringing this Motion; (*see* Rules 37(b) and (c), ARIZ. R. CIV. P.; *see also*, *e.g.*, *Nienstedt v. Wetzel*, 133 Ariz. 348, 352 (App. 1982) (affirming a Rule 37 sanction of dismissal of the complaint, attorneys' fees incurred on appellee's relevant motion and response to separate motion, and payment of appellants' total court costs incurred in the action)); *McGregor*, 206 F.3d at 1385 n.5 (holding that contempt sanctions may "compensate a party for losses suffered as a result of the contemnor's act."); and (b) following up on Plaintiff's initial discovery requests, including all correspondence, subsequent discovery requests, motions, and court hearings relevant to obtaining this information. *See* Rule 37(c)(1) ("A party or attorney who makes a disclosure pursuant to Rule 26.1 that the party or attorney knew or should

have known was inaccurate or incomplete and thereby causes an opposing party to engage in investigation or discovery, shall be ordered by the court to reimburse the opposing party for the costs, including attorney's fees of such investigation or discovery.").

## VI.    CONCLUSION

Defendants violated this Court's Order, Rule 37, FED. R. CIV. P., **and** Arizona law regarding spoliation of evidence.  For these reasons and the reasons set forth herein, Plaintiff respectfully requests that this Court impose appropriate sanctions, including but not limited to contempt, upon Defendants for their intentional withholding, destruction, and spoliation of information harmful to their case.  Since alternative remedies could be issued here, a Proposed Order to Show Cause is **NOT** attached hereto, and any additional order for sanctions is left to the Court's discretion.

Respectfully submitted, this 22nd day of November, 2005.

MESCHKOW & GRESHAM, P.L.C.


By:   s/Jordan M. Meschkow
     Jordan M. Meschkow
     Lowell W. Gresham
     MESCHKOW & GRESHAM, P.L.C.
     5727 North Seventh Street
     Suite 409
     Phoenix, Arizona 85014-5818

8050-0131-108

CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2005 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Jordan Greene and Charles Houston
FENNEMORE CRAIG
3003 North Central Avenue, Suite 2600
Phoenix, Arizona 85012-2913

Attorneys for Defendants

A printed copy is being hand-delivered to Judge's chambers, with the ECF confirmation.

/s Jordan M. Meschkow

8050-0131-108                                        18