**MESCHKOW & GRESHAM, P.L.C.**
Jordan M. Meschkow (AZ Bar No. 007454)
Lowell W. Gresham (AZ Bar No. 009702)
5727 North Seventh Street
Suite 409
Phoenix, Arizona 85014-5818
(602) 274-6996
(602) 274-6970 (facsimile)
Email: mg@patentmg.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| DAN COOGAN, doing business as Coogan Photographic,<br><br>Plaintiff,<br><br>v.<br><br>AVNET, INC., et al.,<br><br>Defendants. | **Case No.: CV-04-0621 PHX SRB**<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY DEFENDANTS' EXPERT JOHN TROTTO AS AN EXPERT WITNESS AND TO EXCLUDE HIS REPORT AND TESTIMONY FROM EVIDENCE**<br><br>**(Assigned to The Hon. Susan R. Bolton)** |

Plaintiff Dan Coogan ("Plaintiff" or "Coogan"), hereby submits his Reply in Support of his Motion To Disqualify Defendants' Expert John Trotto As An Expert Witness And To Exclude His Report And Testimony From Evidence. This Reply is supported by the attached Memorandum of Points and Authorities and the entire Court record in this case, incorporated herein by reference.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

As set forth in Plaintiff's Motion, the opinions of Defendants' expert, John Trotto ("Trotto"), must be excluded due to Trotto's lack of the necessary qualifications, as well as the exceeding unreliability and irrelevance of his methods and conclusions. Indeed, he meets *none* of the requirements for expert testimony under the Federal Rules of Evidence or *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) ("*Daubert*") and its progeny.

Alternatively (or additionally), Trotto should be disqualified as an expert altogether due to his overwhelming biases.

## II. REGARDLESS OF ITS "RELEVANCE", TROTTO'S OPINION WILL NOT ASSIST THE TRIER OF FACT.

Trotto and his attorney repeatedly confirmed during Trotto's deposition that Trotto is *not being offered as a damages expert*. Motion at Pages 3-5.  Yet Defendants' Response argues that Trotto's testimony should be admitted because it is "relevant" to the calculation of a small portion of Plaintiff's damages.  Defendants should not be allowed to reverse course now, deeming Trotto an expert as to damages.  Trotto does not opine as to damages and Plaintiff was not allowed to depose him with regard to damages; thus, his Report and testimony should be excluded.

Moreover, the issue under Rule 702, FED. R. EVID. ("Rule 702"), is not whether Trotto's testimony is relevant, as Defendants imply, but, rather, *whether his testimony will assist the trier of fact*.  Even if fair market value is *relevant* to actual damages, it is only a fraction of what comprises actual damages and is, thus, only marginally helpful to the trier of fact in determining damages. *See Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 707-08 (9th Cir. 2004).  Besides Trotto's testimony being only marginally helpful at best, by offering as their only damages expert an "expert" designed to opine only as to a fraction of the damages, Defendants are offering expert testimony that is highly prejudicial with the potential to be misleading.  Thus, Trotto's testimony must also be excluded not only under Rule 702, but also under 403, FED. R. EVID. ("Rule 403").

## III. TROTTO IS NOT QUALIFIED AS AN EXPERT IN THIS CASE.

Defendants do not dispute that, as set forth in Plaintiff's Motion, Trotto "has no formal education, training, or other knowledge of photography pricing or copyright infringement damages, and has never been considered an expert in any of these areas."  Motion at 5.  These uncontested deficiencies alone are more than sufficient to exclude Trotto's testimony under Rule 702, FED. R. EVID. ("Rule 702").  Should any doubt remain

as to Trotto's lack of qualifications, however, the *Baker* case, *Baker v. Urban Outfitters, Inc.*, 254 F. Supp.2d 346 (S.D.N.Y. 2003), leaves no question.[1]

Defendants do not dispute that, under *Baker*, an assignment photographer generally is not qualified to offer expert opinions on stock photography. Neither do Defendants argue that Trotto's "expertise", if any, and his Report focus almost solely on assignment photography, likely making Trotto unqualified to opine as to stock photography. What Defendants creatively attempt to argue instead, is that when the Vallee Photographs at issue in this case were licensed to Avnet, they were *not* stock photography but were, rather, assignment photography.

This argument is **both incorrect and irrelevant**. It is nothing more than an attempt to confuse an issue that is well-established in the photography field. As stated in Plaintiff's Motion, Defendants' Response, and relevant case law and business authority, professional photographs typically are sold in one of two general ways. The first, generally more expensive method of sale is to sell "commissioned" or "assignment" photography whereby the purchaser commissions the photographer to take the desired photographs specifically for the purchaser's benefit. The second is to sell "stock" photography, which is photography that the photographer already has on hand. *See* Motion at Page 6; Response at 4-6; *see also Baker*, 254 F. Supp.2d 346, 353-55. The Vallee Photographs that Avnet used and purchased rights to were stock photography, as it is defined by any and every legal and photographic authority known to Plaintiff. Indeed, as pointed out by Defendants, Trotto himself acknowledged that Plaintiff's Vallee Photographs were stock photographs when they were sold to Avnet.

Nonetheless, Defendants argue that because Upside Magazine originally commissioned Plaintiff to take the Vallee Photographs as assignment photography, the

---

[1] While Defendants give a laundry list of factual differences between *Baker* and this case, the basic principle still applies: In view of the crucial differences between stock and assignment photography, "in both purpose and practice, [the expert's] experience with pricing specially commissioned photographic shoots fails to qualify her as an expert on the matter of valuing a stock photograph." *Baker*, 254 F. Supp. 2d at 353-55.

photographs remain assignment photography for all purposes, forever. This argument is simply incorrect. In truth, it is common for stock photography to be derived from assignment photography: one customer commissions the photograph as assignment photography and purchases limited rights for its use. The photographer retains the copyright and keeps the photograph on hand for sale to other buyers in the future as stock photography. *See* Seth Resnick, "Stock Photography Basics: A How-To Guide For Stock Photography," written for The American Society of Picture Professionals[2] Online Magazine: The Picture Professional, http://www.aspp.com/picprof/BUSINESSPHOTO_STORIES/stock_photo_basics_sr.html, copyright 2002, attached hereto as Exhibit 2 ("Stock photographs are produced in two basic ways. *Photographers retain rights to the images they produce on assignment for clients and turn those images into stock photography* or they actually fund elaborate productions to generate images specifically for stock.")[3]; *see also* Michael Heron & David MacTavish, PRICING PHOTOGRAPHY, THE COMPLETE GUIDE TO ASSIGNMENT AND STOCK PRICES (rev.ed. 1997), attached as Exhibit 1 to Defendants' Response, with more of it attached as Exhibit 3 hereto; *see also* Response at 4-5.

Here, Plaintiff shot the Vallee Photographs on assignment from Upside Magazine and billed Upside Magazine. Plaintiff later discovered that Avnet was using the photographs without authorization. At that point, Plaintiff began negotiating with Avnet to recover from them (1) compensation for the infringement and (2) limited rights to use the photographs in the future. At no time did Avnet "step in" and pay for Upside Magazine's

---

[2] "The American Society of Picture Professionals (ASPP) is a nationwide organization of professionals who produce, sell, edit, catalog and use photographic imagery." The About ASPP web page is attached as Exhibit 1.

[3] This is a basic, elementary definition for "stock photography" in the well-respected Online Magazine, "The Picture Professional", given by a well-respected, and knowledgeable often-lecturing on the subject, photographer. *See* Seth Resnick Lecture History 1995-Present from http://www.sethresnick.com, attached as Exhibit 5.

project, as stated in Defendants' Response.  This assertion is simply false.  Plaintiff's Upside Magazine invoice relevant to this photography assignment included:

> **Usage Rights:**  Photographs are for **one-time editorial publication rights only in Upside North American issue of the magazine only.**  No Electronic rights granted. No Reprint rights granted. **These rights may not be transferred by the client to a third party.  Client may not reprint or sell the Images to anyone.**

Document CGN 01140-01141, attached here as Exhibit 4 (emphasis added).  These are not the same rights purchased by Avnet; Upside Magazine's invoice was *never paid*.  Plaintiff was unable to pursue his monetary claim against Upside Magazine because it went out of business; it also unlawfully transferred at least one of Plaintiff's Vallee Photographs to Avnet[4].  In contrast to Upside Magazine, Avnet, *only after getting caught infringing* (in not one, but two issues of Avnet Global Perspective magazine), negotiated a price for its original two-edition publication infringement and a prospective "one year non-exclusive use in Avnet publications (excluding the annual report)", with "[n]o other rights [] granted" for $2500.  Avnet's purchase, for both the infringement and its future use, was a purchase of stock photography.  Indeed, the book cited by Defendants in their Response specifies some of the key differences between stock and assignment photography:

- "**Approval:** *with stock, everyone knows in advance what the picture looks like, how well it works with the concept and in the lay-out.* **An assignment photo can be a pig in a poke. It may not come up to your imagined expectations or it may far exceed expectations when in the hands of a fine photographer**."

    [Here, Avnet was able to view the Vallee Photographs, confirm that the Photographs were useful, and purchase limited rights to use those photographs, without going to the risk and expense of assignment photography.]

- "**Schedule:** *with stock, once you've found it, you've got it. There are no hold-ups.* **An assignment handled by a skilled professional will be done on time, but there are sometimes delays, like weather, beyond anyone's control. They should be factored into any assignment schedule.**"

---

[4] *See* Avnet's Responses to Plaintiff's Second Request for Admissions to Defendant Avnet, Inc., admissions 1 and 2, incorporated by reference herein, and earlier attached to Document 60 in this matter.

> [Again, Upside Magazine had already commissioned the photographs and dealt with the unexpected delays and expenses. Avnet had merely to choose the photographs it wanted.]
>
> - **"Concept:** when you are developing an idea you can benefit equally from working with an imaginative assignment photographer or a creative stock agent."
>
> [Avnet used photographs for which the concept had already been developed.]
>
> - **"Freshness:** an assignment will guarantee you a photograph that has never been published before, one that is unique to your project, tailor-made for your use. On an assignment you can take advantage of an exciting creative collaboration with the photographer or be the beneficiary of the magical unpredictability that can happen on a shoot, when things work even better than anyone imagined. That's the upside of risk" [**in assignment photography**].
>
> [Again, Avnet used photographs that had been published before by Upside Magazine, making the photographs, by definition, stock photographs.]

*See* Exhibit 3 at 138 (Emphases added).[5]

Simply put, Upside Magazine commissioned Plaintiff to take assignment photographs of Roy Vallee. Avnet later purchased rights to those photographs as stock photographs. No authority refutes this point.

## IV. DEFENDANTS IGNORE THE CORE ISSUE OF TROTTO'S UNRELIABILITY

The core of Plaintiff's Motion is that Trotto's opinion is unreliable and, therefore, must be excluded. Plaintiff first points out that Trotto's opinion, rather than being based on facts or data, is based upon his subjective pricing methods *and nothing else.* Plaintiff then demonstrates that Trotto does not meet even one of the *Daubert* reliability requirements.

Defendants attempt to circumvent the need for accurate facts and data, as well as the need to be concerned with *Daubert*, by citing *Groobert* for the proposition that Rule 702 is "flexible." Motion at 8 (quoting *Groobert v. President & Directors of Georgetown*

---

[5] Defendants attach portions of the Heron & MacTavish book as Exhibit 1 to their Response, omitting certain relevant portions. Plaintiff, therefore, attaches the additional pages 136-142 hereto as Exhibit 3.

*College*, 219 F.Supp.2d 1, 7 (D.C. Cir. 2002)). "Flexible," however, does not equate to "lenient." An unqualified expert is an unqualified expert, and unreliable methods cause an expert opinion to be inadmissible. *Groobert* is not so lenient as Defendants would have the Court believe, stating that "[e]xpert testimony that rests solely on 'subjective belief or unsupported speculation' is not reliable." *Groobert*, 219 F. Supp. 2d at 6 (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 590 (1993)). Moreover, in admitting the expert testimony, *Groobert* focuses heavily on the fact that the photography to be valued was stock photography, and the proffered expert had years of experience specifically in *stock* photography. *Groobert*, 219 F.Supp. at 8.

Plaintiff's Motion also demonstrates in depth that Trotto's so-called principles and methods, to the extent they even existed, do not apply to the facts of this case. Defendants do not even attempt to refute this point.

Lastly, Plaintiff's Motion points out that peer review is an extremely important element of reliability and that, here, "Trotto freely admits that no one has approved his methods, no one has reviewed his methods, no one definitively uses his methods and, indeed, his methods are not the industry standard." Motion at Page 15. Again, Defendants do not dispute this deficiency.

In short, although Defendants cite a case where Rule 702 was applied as "flexible," they do not refute any of the serious reliability concerns raised in Plaintiff's Motion; therefore, Trotto's testimony must be excluded as unreliable.

**V.   THIS COURT HAS THE DISCRETION TO DISQUALIFY TROTTO BASED ON HIS BIASES ALONE.**

Defendants correctly argue that an expert's bias can be treated as a credibility issue for the factfinder. Response at 10. What Defendants ignore, however, is that this Court also has the inherent authority to disqualify Trotto as an expert as a matter of law (*See Campbell Ind. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)) or to exclude his testimony, due to his overwhelming biases set forth in Plaintiff's Motion. *See* Motion at Pages 16-17;

*see also* Rule 403, FED. R. EVID. ("evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay …."). The issue of disqualification due to bias is solely a discretionary one for the Court.

## VI. CONCLUSION

Plaintiff respectfully requests that the Court grant his Motion and enter an Order disqualifying Trotto as an expert. Alternatively, or additionally, Plaintiff requests that the Court enter an Order precluding Defendants, their counsel, and their witnesses from making reference to and/or introducing evidence regarding Trotto, his Report, or his testimony.

RESPECTFULLY SUBMITTED this 3rd day of March, 2006.


By: s/Jordan M. Meschkow_____
    Jordan M. Meschkow
    Lowell W. Gresham
    MESCHKOW & GRESHAM, P.L.C.
    5727 North Seventh Street
    Suite 409
    Phoenix, Arizona 85014-5818

## CERTIFICATE OF SERVICE

I hereby certify that on 3 March 2006 I electronically transmitted the attached document and its Exhibits to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

>   Jordan Greene
>   FENNEMORE CRAIG
>   3003 North Central Avenue, Suite 2600
>   Phoenix, Arizona 85012-2913
>
>   Attorneys for Defendants


s/ Jordan M. Meschkow